# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5906 | **DATE** | October 12, 2000 |
| **CASE TITLE** | *James S. "Jim" Young, et al. vs. Illinois State Board of Elections, et al.* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Schober's motion to dismiss is granted in part and denied in part. Count II of plaintiffs' complaint is dismissed with prejudice for lack of subject matter jurisdiction under the doctrine of Rooker-Feldman. With respect to Count I, the plaintiffs' motion for a preliminary injunction is denied. The case is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| ✓ | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | OCT 13 2000 |
| | Docketing to mail notices. | | date docketed |
| ✓ | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| | | | date mailed notice |
| CW | courtroom deputy's initials | FD-7 FILED FOR DOCKETING 00 OCT 12 PM 5: 42 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 13

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| James S. "Jim" Young, Raymond W. Baruth, Jr., and Ken Prazak, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Illinois State Board of Elections, the State Officers Electoral Board and its members in their official capacities only; Chairman William McGuffage, Wanda Rednour, Elaine Roupas, Kay D. Holloway, David E. Murray and Phillip O'Connor and the objector Thomas R. Schober | ) ) ) ) ) ) ) ) ) | Case No. 00 C 5906 <br><br> Judge James H. Alesia |
| Defendants. | ) ) | |

DOCKETED
OCT 1 3 2000

## MEMORANDUM OPINION AND ORDER

Currently before the court is plaintiffs' motion for a preliminary injunction against defendants. For the following reasons, the court denies plaintiffs' motion for a preliminary injunction.

## I. BACKGROUND

Plaintiff James S. Young ("Young") is a member of the Libertarian Party of Illinois. Young is seeking to have his name placed on the ballot for State Representative for the 64th district. Plaintiff Raymond W. Baruth ("Baruth") is a registered voter in the 64th district and plaintiff Ken Prazak ("Prazak") is a registered voter outside of the 64th district. Young, Baruth and Prazak (collectively "plaintiffs") have brought this suit against the Illinois State Board of



Elections, its individual members, and Thomas R. Schober (an individual who objected to Young's nominating petition) seeking to have a section of the Illinois Election Code declared unconstitutional. The following facts are taken from plaintiffs' complaint unless otherwise noted.

Sometime before December 13, 1999, Young circulated one sheet of a nominating petition for Republican candidate Cal Skinner ("Skinner"). Skinner – the incumbent – was seeking re-election for the office of State Representative for the 64th district but was defeated in the primary election. Following Skinner's defeat, Young sought to have himself nominated as the Libertarian Party's candidate for State Representative for the 64th district in the general election. In order to get his name on the ballot, Young (or others working on his behalf) had to circulate nominating petitions and obtain a minimum of 1,878 signatures on those petitions. Young, however, was concerned about his ability to circulate a nominating petition on his own behalf in light of the fact that he had circulated a petition for Skinner. The cause for concern regarding Young's ability to circulate petitions stems from a portion of § 10-4 of the Illinois Code of Elections which prohibits a person from being a dual circulator: "No person shall circulate or certify petitions for candidates of more than one political party, or for an independent candidate or candidates in addition to one political party, to be voted upon at the next primary or general election..." 10 ILL. COMP. STAT. 5/10-4 ("§ 10-4").

Young states that he discussed his eligibility to circulate a nominating petition with Skinner and A.L. Zimmer ("Zimmer"), the general counsel at the Illinois State Board of Election

("ISBE"). Zimmer informed Young that the law was unclear but that Young should probably not circulate any nominating sheets himself because he would be a dual circulator. Young also consulted with the Libertarian Party's general counsel who advised Young that, although the law was unclear and contrary to what Zimmer had advised, Young could circulate petitions himself. So, despite Zimmer's warning, Young circulated nominating sheets on his own behalf. Young claims that he was unable to secure additional help from circulators who were registered in the 64th district and, thus, was forced to circulate petitions himself in order to obtain the requisite number of signatures. Young did have one assistant who circulated two sheets for the nominating petition while Young, himself, circulated 294 sheets. With a total of 2,915 signatures on 296 sheets, Young obtained enough signatures to be placed on the ballot for the general election.

On July 3, 2000, however, defendant Schober filed an objection to Young's nominating petition pursuant to § 10-4. Specifically, Schober claimed that the 294 sheets circulated by Young were invalid because those signatures had been obtained by a dual circulator, which is prohibited under § 10-4. The ISBE overruled Schober's objections on August 21, 2000. In overruling the objection, the ISBE found that § 10-4 was ambiguous with respect to the dual-circulator prohibition. Although that vote was four-to-two in favor of sustaining the objection, Illinois law requires at least five votes in order for the ISBE's action to take effect. Thus, Schober's objection was overruled and Young's petition remained valid.

3

Schober then filed an action in the Circuit Court of Sangamon County seeking reversal of the ISBE's decision and have Young's petition declared invalid pursuant to § 10-4's dual-circulator prohibition. Young requested that the issues be briefed before the circuit court made its ruling. (Def. Resp. Br., Ex. A.) On September 20, 2000, the circuit court issued its decision reversing the ISBE's decision and ordering that Young's name be stricken from the ballot. The circuit court's decision was based upon the dual-circulator prohibition of § 10-4; the court found that Young was a dual-circulator as defined by the statute. The circuit court further found that the dual-circulator prohibition was constitutionally applied to Young under the Seventh Circuit's ruling in *Citizens for John W. Moore v. Board of Election Comm'rs*, 794 F.2d 1254 (7th Cir. 1986) (holding that the dual-circulator provision of § 10-4 was constitutional). (Def. Resp. Br., Ex. A.)

Plaintiffs then filed this action in federal district court on September 26, 2000 – and a motion for a preliminary injunction on September 27, 2000 – asking this court to declare § 10-4 of the Illinois Election Code unconstitutional and to direct that Young's name be included on the ballot for 64th district's State Representative. In their complaint, plaintiffs challenge two portions of § 10-4. In Count I, plaintiffs argue that §10-4's prohibition on the use of non-registered voters in name collecting on nominating petitions is unconstitutional because the restriction violates First Amendment rights of speech and association. In Count II, plaintiffs challenge § 10-4's prohibition on dual circulation, claiming that such a restriction is unconstitutional because Young's First Amendment rights far outweigh any state interest in prohibiting dual circulators. Plaintiffs also argue that there was no dual circulation in the present

4

case as defined by the local rules. Plaintiffs reiterate these arguments in their motion for a preliminary injunction. In their response to plaintiffs' motion, defendants object to the motion for preliminary injunction arguing that (1) this court lacks jurisdiction under the doctrine of Rooker-Feldman; (2) plaintiffs' claims are barred by *res judicata*; (3) Baruth and Prazak lack standing to bring this action; and (4) the constitutionality of the registration restriction in § 10-4 is irrelevant to the present action.[1]

## II. <u>DISCUSSION</u>

Before addressing the merits of plaintiffs' claim, the court must first determine whether it has jurisdiction over the present suit.[2]

---

[1]During the hearing on plaintiffs' preliminary injunction motion on October 10, 2000, it was represented to the court that Young had filed an appeal of the circuit court's ruling with the Illinois Appellate Court on October 4, 2000. At the hearing, the defendants raised the issue of abstention. Further, defendant Schober filed a motion to dismiss arguing that the court lacked jurisdiction under the *Younger* doctrine. The court finds that *Younger* does not apply as that doctrine requires a federal court to abstain from hearing a federal action challenging a criminal statute while the state is prosecuting the federal plaintiff for violating that statute. *See Mannheim Video, Inc. v. County of Cook*, 884 F.2d 1043 (7th Cir. 1989) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). The court finds that the *Colorado River* doctrine – which holds that a federal court should stay or dismiss a suit when there is a concurrent, parallel state proceeding – is more applicable. *See Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698 (7th Cir. 1992) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)). However, the court finds it lacks subject matter jurisdiction under Rooker-Feldman (*see infra* Sect. II.B) and, therefore, lacks the authority to stay the current proceeding.

[2]Defendant Schober has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that this court lacks jurisdiction under the Rooker-Feldman doctrine. Because the court finds that Rooker-Feldman precludes this court from hearing plaintiffs' claim regarding § 10-4's dual-circulator prohibition, the court grants Schober's motion to dismiss Count II of plaintiffs' complaint. *See infra* Sect. II.B.1. However, because the court finds that plaintiffs' claims regarding § 10-4's registration requirement is an independent claim, the court
(continued...)

## A.  Standing

Defendants argue that plaintiffs Baruth and Prazak lack standing to bring this suit.  The court disagrees.  Baruth is a registered voter in the 64th district and, in connection with the preliminary injunction motion, has filed an affidavit stating that he wishes to vote for Young. Thus, if Young's name is stricken from the ballot, Baruth's right to support the candidate of his choice is hindered.  Thus, he has standing to challenge the constitutionality of § 10-4 which is precluding Young's inclusion on the ballot. *See, e.g., Jackson v. Ogilvie*, 325 F. Supp. 864 (N.D. Ill. 1971).  Further, Prazak is a non-registered voter who wished to support Young's efforts by circulating nominating petitions on Young's behalf, but was precluded from doing so under § 10-4.  Thus, Prazak has standing to challenge the constitutionality of the statute that is depriving him of his right to associate and vote for the candidate of his choice. *See Tobin for Governor v. Illinois State Bd. of Elections*, 105 F. Supp. 2d 882, 886-87 (N.D. Ill. 2000).

## B.  Rooker-Feldman Doctrine

Plaintiffs' motion for a preliminary injunction raises two claims:  (1) that § 10-4's dual-circulator prohibition is unconstitutional and, alternatively, that Young is not a dual circulator and (2) that the registration requirement of § 10-4 is unconstitutional.  Defendants contend that the issues presented in plaintiffs' motion for a preliminary injunction are the exact issues which were addressed by the circuit court.

---

[2](...continued)
denies Schober's motion to dismiss Count I of plaintiffs' complaint. *See infra* Sect. II.B.2.

The Rooker-Feldman doctrine – derived from two Supreme Court decisions – is based upon the recognition that lower federal courts do not have the power to exercise appellate review over state court decisions. *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996). Under Rooker-Feldman, lower federal courts lack jurisdiction over claims seeking review of state court judgments or over claims that are "inextricably intertwined" with state court determinations. *4901 Corp. v. Cicero*, 220 F.3d 522, 526 (7th Cir. 2000). Thus, a party who seeks to overturn a state court judgment must proceed through the state judicial system and can only seek federal review from the United States Supreme Court. *Id.*

To determine whether Rooker-Feldman applies the court must determine whether the federal plaintiff seeks to set aside a state court judgment or whether the plaintiff is, in fact, presenting an independent claim. *Id.* In other words, "if the injury which the federal plaintiff alleges resulted from the state court judgment itself, then Rooker-Feldman controls, and the lower federal courts lack jurisdiction over the claim. It does not matter that the state court judgment might be erroneous or even unconstitutional." *Id.* (citing *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir. 1996)).

Further, a federal plaintiff may not seek the reversal of a state court decision simply by casting his complaint in the form of a constitutional violation. *See Garry*, 82 F.3d at 1369. Thus, constitutional claims that are "inextricably intertwined" with state court judgments negate federal district court jurisdiction because it would call for review of the state court's decision. *Garry,* 82 F.3d at 1368 (citing *Feldman*, 460 U.S. at 482). To determine whether the plaintiff

is attacking the state court judgment itself, the nature of the injury is crucial. In *Gash Associates v. Rosemont*, 995 F.2d 726 (7th Cir. 1993), the Seventh Circuit found that the federal plaintiff was not asserting a separate constitutional violation but was attacking the judgment of the state court. *Id.* at 728-29 (holding that Rooker-Feldman applied where federal plaintiff's § 1983 for improper taking was an attack on the state court's confirmation of a foreclosure sale of his house). Specifically, the Seventh Circuit found that the plaintiff did not suffer any injury out of court but that the injury came from the judgment confirming the sale of the federal plaintiff's home. *Id.* Rooker-Feldman does not apply, therefore, when the plaintiff states an independent claim or injury. *See Remer*, 205 F.3d at 997-98 (finding that Rooker-Feldman did not preclude federal plaintiff's § 1983 action, claiming her son was expelled from school without due process, where a state court had entered an injunction barring plaintiff's son from school grounds).

The Seventh Circuit has recognized the distinction "between a federal claim alleging injury caused by a state court judgment (necessarily raising the Rooker-Feldman doctrine) and a federal claim alleging a prior injury that a state court failed to remedy (raising a potential *res judicata* problem but not Rooker-Feldman)...." *Garry*, 82 F.3d at 1366-67. Further, the Seventh Circuit has offered a rough guide to determining whether to apply Rooker-Feldman: "[i]f the federal plaintiff was the plaintiff in state court, apply *res judicata*; if the federal plaintiff was the defendant in state court, apply Rooker-Feldman." *Id.* at 1367 (affirming the reasoning that a defendant who has lost in state court and sues in federal court does not assert injury at the hands of his adversary, he asserts injury at the hands of the court). This shortcut rule is based in the

reasoning that the status of the parties in a preceding state court judgment usually relates to the source-of-the-injury analysis. *Id.* In this case, Young – a federal plaintiff in the current action – was the defendant in the state court action. In that action, the circuit court invalidated Young's nominating petition and ordered his name struck from the ballot. Applying this simple, it seems that Young's injury was the result of the state court decision and, thus, Rooker-Feldman applies. However, while this is helpful, the Seventh Circuit has also cautioned that this is not a pre se rule. *Id.* The court will, therefore, delve more deeply into the application of Rooker-Feldman in the present case.

In its most straight-forward presentment, Rooker-Feldman bars federal jurisdiction when the federal plaintiff alleges that his injury was caused by a state court judgment. *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). However, the Rooker-Feldman doctrine is not just limited to those claims that allege that the state court judgment caused the plaintiff's injury – it also precludes federal jurisdiction over those claims that are "inextricably intertwined" with a state court determination, even if those claims *were not raised in the state court* proceeding. *Id.* Thus, impermissible review by a federal court may occur when a district court is asked to entertain a claim that was not even raised in the state court. *Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir. 1993) (holding that the Rooker-Feldman doctrine precluded the federal plaintiffs from bringing their § 1983 claim against a county treasurer after their home was foreclosed upon by the county); *see also Guess v. Board of Med. Exam'r*, 967 F.2d 998, 1002-03 (4th Cir. 1992) (holding that plaintiffs who lose in state court cannot recast their claims in

federal court under the guise of federal constitutional claims that were not raised or decided by the state court when such constitutional claims are inextricably intertwined with the merits of the state court decision). "The pivotal inquiry is 'whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim.'" *Remer*, 205 F.3d at 996 (citations omitted).

In this federal action, plaintiffs challenge the constitutionality of two portions of § 10-4: (1) § 10-4's prohibition of dual-circulators and (2) § 10-4's prohibition on the use of non-registered voters to circulate nominating petitions. The court must now determine whether plaintiffs' current claims are independent of the state court action or whether they seek review of the circuit court's judgment (or are inextricably intertwined to the state court proceeding).

### 1. **Prohibition on dual circulators**

In this case, Young was a defendant in a state court action brought by the current, federal defendants. In that action, Schober sought to have Young's nominating petition invalidated and Young's name struck from the ballot. The circuit court ruled that Young was a dual circulator and, therefore, those nominating petitions circulated by him were invalid. Consequently, with those petitions invalidated Young did not have the requisite number of signatures to be listed on the ballot. Accordingly, the circuit court ordered that Young's name be stricken from the ballot. (*See* Def. Resp. Br., Ex. A.)

Defendants now argue that plaintiffs' current claims are the same issues that were presented to the state court – namely that § 10-4 is unconstitutional and that Young should be

placed on the ballot. Plaintiffs, on the other hand, reply that two of the plaintiffs – Prazak and Baruth – were not parties to the state court action and, therefore, could not be seeking its review and that ISBE, a current federal defendant, was a plaintiff in the state court action. However, in determining whether Rooker-Feldman applies, the pivotal inquiry is not the exact similarity of the parties but rather whether the federal plaintiffs seek to set aside a state court judgment -- or raises claims that are inextricably intertwined with the state court proceeding – or whether the federal plaintiffs raise independent claims.[3] *See Remer*, 205 F.3d at 996.

It is clear from the state court's opinion that the state court considered the constitutionality of § 10-4: "The issue presented here is essentially a simple one: Does Section 10-4 of the Election code *constitutionally* prohibit the circulation of nominating petitions by the same person for candidates of different parties." (Def. Resp. Br., Ex. A.) Further, in addressing the constitutionality of § 10-4's dual-circulator prohibition, the state court adopted the holding of the Seventh Circuit case *Citizens for John W. Moore v. Board of Election Comm'rs*, 794 F.2d

---

[3]Plaintiffs further argue that federal courts have jurisdiction to review general challenges to statutory provisions. While the Feldman court did rule that the federal courts can review the general constitutionality of certain rules and provisions, federal courts can only review a state court's *nonjudical* actions – not a state court's judicial decision whether or not a constitutional error is alleged. *Ritter*, 992 F.2d at 753 (discussing the distinction made by the Feldman court when it held that the federal courts may review the constitutionality of state bar rules as such rules are more legislative in function). In fact, the Feldman court was very limited in its holding, finding that federal court can review state bar rules (as those rules were promulgated in nonjudicial proceedings) but that the federal courts lacked jurisdiction over challenges to state-court judicial decisions, even if those challenges allege that the state court's action was unconstitutional. *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). Thus, plaintiffs' reliance on the Feldman case is misplaced.

1254 (7th Cir. 1986), which found that the dual-circulator provision was a constitutional restriction on ballot access. (*Id.*) Thus, it is clear to this court that the state proceeding addressed the constitutionality of the dual-circulator restriction – which is one of the precise bases for the current plaintiffs' motion for a preliminary injunction.

Further, in the strictest sense of the word, plaintiffs' injury was directly caused by the state court action. It was the state court's judgment – ordering that his placement on the ballot be stricken – which resulted in plaintiffs' actual injury. In their complaint, plaintiffs argue that § 10-4's restrictions upon circulators of nominating petitions impeded their ability to circulate petitions and, thus, harmed plaintiffs. Had plaintiffs adhered to the dual-circulator prohibition and, consequently, been unable to obtain the requisite number of signatures, then that restriction would have been the direct cause of plaintiffs' harm. While this restriction may impede plaintiffs' constitutional rights, it was the removal of Young's name from the ballot that directly caused the actual harm. This removal was the direct result of the circuit court's order.

Finally, plaintiffs argue that the issue before the state court was not the constitutionality of § 10-4 but only that the state court should affirm the Board's decision and that his manner of circulating his petition was not dual circulation under the statute.[4] Even if Young never raised the issue of constitutionality to the state court that issue was inextricably intertwined to the state

_____

[4]It appears that Young contends that he is not a dual circulator because he did not circulate nominating petitions in more than one election. Specifically, Young argues that, under the statute, he can circulate a petition for Skinner in the primary and then circulate a petition for himself in the general election.

court proceeding on whether Young's name should be stricken under § 10-4's prohibition against dual circulators. If Young thought that the Illinois statute was unconstitutional, he should have litigated its constitutionality in the state court system, pursuing the matter to the United States Supreme Court, if need be. *See 4901 Corp.*, 220 F.3d at 528 (finding that Rooker-Feldman denied the federal court jurisdiction to consider the constitutionality of a settlement agreement because the federal plaintiffs should have litigated that issue in the state court).

In sum, plaintiffs' claim that § 10-4's prohibition against dual circulators is unconstitutional is, in effect, the same claim which the circuit court decided. At the very least, the present claim is inextricably intertwined with the circuit court's decision and Young should have raised the constitutionality of that statutory provision at the state proceeding. Thus, if this court were to decide the merits of this claim, it would result in an impermissible review of the circuit court's decision under the Rooker-Feldman doctrine. Accordingly, with respect to plaintiffs' claims regarding the dual circulator provision, the court denies plaintiffs' motion for a preliminary injunction and dismisses that count of plaintiffs' complaint (Count II), with prejudice, for lack of subject matter jurisdiction.[5]

---

[5]Even if this court did not lack jurisdiction to decide the merits of plaintiffs' claim regarding the constitutionality of the dual circulator restriction, it would still deny a preliminary injunction on that ground. The prohibition against dual circulators has been upheld as constitutional by the Seventh Circuit and Illinois courts. *See Citizens for John W. Moore Party v. Board of Election Comm'rs*, 794 F.2d 1254, 1256-61 (7th Cir. 1986) (finding that the state had a legitimate interest in protecting voting integrity and that § 10-4's dual circulator prohibition was a less restrictive restraint than the state could have adopted); *Citizens for John W. Moore Party v. Board of Election Comm'rs*, 845 F.2d 144, 148 (7th Cir. 1988) (applying § 10-4's dual
(continued...)

## 2.    Registration requirement

Plaintiffs also challenge the constitutionality of § 10-4's registration requirement. Under § 10-4, non-registered voters are not permitted to circulate nominating petitions. Young did not use non-registered voters to circulate nominating petitions for his candidacy. However, in the current preliminary injunction motion and at oral argument held on October 10, 2000, Young argues if it were not for the registration requirement then he would have used non-registered voters to circulate his nominating petitions instead of circulating the petitions himself. However, because he could not use non-registered voters under § 10-4, Young was forced to circulate the petitions himself and, thus, was in danger of having his petition invalidated because of dual circulation. Many courts have held that such registration requirements are unconstitutional and, in so holding, have found that candidates have a right to associate with whomever they please -- whether those persons are registered voters or not. *See infra* Sect. II.C. Section 10-4's registration requirement, therefore, could violate plaintiffs' First Amendment rights to

---

[5](...continued)
circulator prohibition to candidate circulators); *McGuire v. Nogaj*, 496 N.E.2d 1037, 1040 (Ill. App. Ct. 1986) (holding that the ordinary language of § 10-4 prohibited a person from circulating a petition for an independent candidate in addition to a political party). This court is persuaded by the reasoning of those courts and finds that the restriction against dual circulators is constitutional. Thus, under Illinois law, because Young circulated a petition for a Republican candidate during the primaries, he was prohibited from circulating a petition for another candidate – even himself – during the remaining election season. *See Moore*, 794 F.2d at 1262 (adopting the district court's finding that § 10-4 prohibited dual circulation "within an election season" (emphasis added)). Accordingly, plaintiffs would be unlikely to succeed on the merits of their claim and the court, therefore, would deny plaintiffs' motion for a preliminary injunction on that basis.

association and speech. Given plaintiffs' current arguments, it seems that the constitutionality of the registration requirement is a defense to Schober's objection to Young's petition and, therefore, should have been raised with the state court. However, in light of the recent precedent on this issue, the court finds that the constitutionality of the registration requirement could be an independent claim and, thus, is not barred by Rooker-Feldman. Further, the circuit court did not address this issue in its decision. Thus, while this claim may be related to the state court action, the court cannot say conclusively that it is so related as to be "inextricably intertwined." Accordingly, the court will address the merits of plaintiffs' claims regarding the constitutionality of § 10-4's registration restriction.[6]

## C.    Constitutionality of § 10-4's Registration Restriction

Section 10-4 contains a restriction that each petition circulator must be a registered voter in the political district in which that petition is being circulated. Plaintiffs challenge the constitutionality of this restriction.

Both the United States Supreme Court and the Seventh Circuit have addressed similar restrictions with respect to circulators. *See Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182 (1999) (addressing the validity of a Colorado statutory restriction which said

---

[6]Defendants also argue that plaintiffs' motion for a preliminary injunction is precluded under the doctrine of *res judicata*. However, because this court has decided that it lacks jurisdiction under the Rooker-Feldman doctrine, it lacks the authority to address the *res judicata* claim. *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996) (holding that "[w]here Rooker-Feldman doctrine applies, lower federal courts have no power to address other affirmative defenses, including *res judicata* ... where Rooker-Feldman applies, the *res judicata* claim must not be reached").

that circulators of an initiative petition must be registered voters); *Krislov v. Rednour*, No. 99-3801, 2000 WL 1268134 (7th Cir. Sept. 5, 2000) (addressing the validity of section 5/7-10 of the Illinois Election Code residency requirement for petition circulators). Both of those courts expressly ruled that voter-registration restrictions for petition circulators are unconstitutional. *Buckley*, 525 U.S. at 197 (holding that such a residency requirement violates First Amendment free speech guarantees because the restriction limited the number of persons available to circulate and sign petitions and, accordingly, restricted core political speech); *Krislov*, 2000 WL 1268134, at *10-11 (holding that 10 ILL. COMP. STAT. 5/7-10's residency and registrations requirements for petition circulators violate the First Amendment rights of political candidates to the extent that the requirements restrict the use of non-residents to speak on the politician's behalf in soliciting signatures for ballot access). Further, relying on the Supreme Court's holding in *Buckley*, a District Court for the Northern District of Illinois has expressly ruled that § 10-4 – the same statute at issue in the present case – is unconstitutional to the extent that it contains voter registration requirements. *Tobin for Governor v. Illinois State Bd. of Elections*, 105 F. Supp. 2d 882, 887-88 (N.D. Ill. 2000) (J. Gettleman).[7] In light of all this authority, this

_____

[7]In their motion and complaint, plaintiffs claim that § 10-4 was declared unconstitutional by the court in *Tobin*, 105 F. Supp. 2d at 883. The court finds that this broad statement by plaintiff is inaccurate insofar as it implies that the entire section was declared unconstitutional. On the contrary, the court in *Tobin* found only that, to the extent that § 10-4 required petition circulators to be registered voters, that portion of the section was unconstitutional. ("[p]laintiffs are not asking the court to remove all barriers to election ballot access; rather they are asking this court to follow the Buckley reasoning that 'petition circulation ... is core political speech' which the voter registration requirement limits." *Tobin*, 105 F. Supp. 2d at 887 (citations omitted).
(continued...)

court finds the reasoning of those courts persuasive and declares that § 10-4's registration requirement is unconstitutional. Further, during oral arguments, defendants stated in open court that they did not contest the unconstitutionality of the registration requirement. However, defendants contend that this restriction is irrelevant to the present case because Young did not use non-registered circulators.

Defendants contend that plaintiffs' petition was not invalidated because Young used unregistered voters to circulate his petition but rather because Young was a dual circulator, which is expressly prohibited by § 10-4. Thus, defendants argue that the registration restriction does not apply to the present case.

Young, on the other hand, argues that he was harmed by the restriction because he was unable to find eligible persons to circulate his petition and that, had he been able to utilize non-registered voters, he would have been able to secure the necessary signatures without having to circulate petitions himself. In support of this argument, plaintiffs have attached to their motion an affidavit from plaintiff Ken Prazak. In that affidavit, Prazak claims that he knows "people who would have volunteered to circulate nominating petitions ... but could not do so because they were not registered voters." (Pl. Mot., Prazak Aff.) However, Prazak does not specifically state who was willing to help or how many non-registered voters were willing to circulate nominating sheets.

---

[7](...continued)
Thus, to the extent that § 10-4 places other limitations upon petition circulators, such restrictions may or may not be constitutional.

This is not the situation where a candidate used non-registered voters to obtain signatures on a nominating petition and, consequently, those signatures were struck and the petition invalidated because the candidate was then left with an insufficient number of signatures. In such a situation, the court could simply validate those signatures obtained by the non-registered voters and then determine whether the candidate has the requisite number of signatures. In this case, the signatures were not obtained by non-registered voters but by Young himself. In order to include Young on the ballot, therefore, the court would have to assume that the other, non-registered circulators would have been able to obtain the necessary number of signatures. This would require the court to assume crucial facts which are not in existence.

There is no evidence that Young's assistants would have been able to obtain enough signatures. On the contrary, the one person that did circulate a petition – besides Young himself – obtained only about twenty signatures. Thus, the court will not assume the fact that, perhaps, others could have obtained signatures when there is no such evidence. Had other, non-registered voters helped circulate petitions for Young, they may very likely have been only as "successful" as Young's other assistant and obtained only twenty signatures each. Further, Young has presented the affidavit of only one  non-registered voter – Prazak, who is a plaintiff in the present cause of action – who was willing but unable to help circulate petitions. Although Prazak claims that he knows of other non-registered voters willing to help, there is no evidence as to how many persons would have helped, nor has any other of those non-registered "willing but unable" circulators signed an affidavit stating that they would have circulated a petition for

18

Young had they not been prohibited. Further, prior to circulating the nominating petition on his own behalf, Young was aware of the risk in circulating a second petition. However, Young claims that, because of the registration restriction, he could not find qualified persons to help him circulate his petition. Perhaps Young should have challenged the constitutionality of this restriction before he began circulating petitions on his own behalf. In that case, the court may have been persuaded by the holdings in *Buckley* and the district court's ruling in *Krislov* and declared that provision unconstitutional, thereby allowing non-registered voters to circulate petitions. As it stands, Young chose to ignore the warnings of ISBE's attorney and circulate a second petition himself. Young obtained signatures himself but they were stricken as invalid under the dual-circulator provision of § 10-4. Thus, the present challenge of the constitutionality of the registration requirement has little impact on the remedy available to plaintiff. While plaintiff may be entitled to a declaratory judgment finding that the registration requirement is unconstitutional, such a claim has little bearing on plaintiffs' request to be placed on the ballot.

In sum, there is no evidence that the use of non-registered voters would have resulted in Young obtaining the sufficient number of signatures required to be placed on the ballot. Thus, even if the registration requirement was unconstitutional, the court finds that plaintiffs have not made a showing that Young is entitled to have his name placed on the ballot. Accordingly, the court declares that the registration requirement contained in 10 ILL. COMP. STAT. 5/10-4 is unconstitutional but denies plaintiffs' request that Young's name be placed upon the ballot.

## CONCLUSION

For the foregoing reasons, the court denies plaintiffs' motion for a preliminary injunction. The court finds that it lacks jurisdiction over plaintiffs' claim regarding the constitutionality of the dual circulator prohibition in 10 ILL. COMP. STAT. 5/10-4. Further, the court finds that the registration requirement of 10 ILL. COMP. STAT. 5/10-4 is unconstitutional. Defendant Schober's motion to dismiss is granted in part and denied in part.

Date: OCT 12 2000

James H. Alesia
United States District Judge